The following constitutes
the order of the court. Signed May 29, 2018

_M. Elaine Hammond_
**M. Elaine Hammond**
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re

Cresta Technology Corporation,

   Debtor.

) Case No. 16-50808 MEH
)
) Chapter 7
)
)
) Date: February 15, 2018
) Time: 10:30 a.m.
) Ctrm: 3020
)

MEMORANDUM DECISION RE: TRUSTEE'S MOTION TO ENTER INTO AGREEMENT TO SETTLE BREACH OF CONTRACT CLAIM AND AMEND ASSET PURCHASE AGREEMENT

Doris Kaelin, the chapter 7 trustee ("Trustee") for Cresta Technology Corporation ("Debtor") seeks authorization to enter into an agreement with DBD Credit Funding LLC ("DBD") and CF Crespe LLC ("CF Crespe") amending the sale proceeds portion of the parties' prior Sale Agreement[1] and resolving an alleged breach of contract claim related to the same. Creditor Silicon Laboratories Inc. ("Silicon Labs") opposes the motion.

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O). This memorandum incorporates the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure ("FRBP") 7052.

---

[1] Agreement to Sell Intellectual Property and Certain Related Litigation, Exh. B to Dkt. # 34. Referred to herein as the "Sale Agreement."

1

1. **Introduction**

In May 2016, the Trustee obtained approval of a sale of Debtor's intellectual property (primarily patents) and related litigation to DBD,[2] its primary secured creditor, for $100,000 and the potential for future proceeds.[3] Silicon Labs opposed the sale. In essence, the Trustee asserted three grounds as to why in her business judgment the proposed sale to DBD provided the best recovery for the estate: (1) DBD agreed not to assert its secured claim against the sale proceeds, thereby providing a means of recovery for unsecured creditors, (2) the estate would receive sale proceeds of $100,000, plus the potential for additional proceeds if DBD were to be successful in defending and pursuing recovery based on Debtor's assets, and (3) DBD would be responsible for all of Debtor's pending litigation, which Debtor was unable to afford or litigate. These factors form the proverbial three-legged stool.

Nineteen months later, the Trustee seeks to enter into an agreement to settle a breach of contract claim with DBD and CF Crespe and amend the asset purchase agreement (the "Settlement Agreement").[4] Through the Settlement Agreement, the Trustee seeks to quantify the second leg of the stool and shorten the third. Applying the *A &C Properties* standards, this court must determine whether the stool still stands.

2. **Settlement Agreement Issues**

a. <u>Net Cash Proceeds from Monetization of IP Collateral</u>:

The Sale Agreement provides for payment of a portion of the proceeds generated from the monetization of the intellectual property assets ("IP Consideration"[5]) from CF Crespe to the Trustee for the benefit of the estate. But CF Crespe is not obligated to make these payments until DBD is repaid the funds it advances in prosecuting the patents and pursuing

---

[2] Prior to closing, and as authorized by the Sale Agreement, DBD assigned its obligations under the Sale Agreement to CF Crespe.
[3] Order Authorizing Trustee to Sell Intellectual Property and Certain Related Litigation, Dkt. # 66. Referred to herein as the "Sale Order."
[4] See Motion to Enter Into Agreement to Settle Breach of Contract Claim and Amend Asset Purchase Agreement ("Motion"), Dkt. # 225, and related Agreement to Settle Breach of Contract Claim and Amend Asset Purchase Agreement, Dkt. # 225-1, Exh. A to declaration.
[5] Defined in Recital 3 of the Sale Agreement.

their monetization. DBD informed the Trustee that as of December 2017, it had expended over $750,000 in connection with its efforts but has not collected any money from its monetization efforts.

By the Settlement Agreement, the Trustee, DBD, and CF Crespe seek to amend the Sale Agreement to liquidate and release the estate's right to additional funds from the IP Consideration, "in exchange for [CF Crespe's] 'buy out' of [its] obligation to pay IP Consideration."[6]

  b. ND Cal Litigation:

In order to effectuate acquisition of Debtor's Litigation[7] by DBD and its assign, CF Crespe, the Sale Agreement required the buyer to take all actions necessary to become the real party in interest in the Litigation. The Trustee alleges that CF Crespe did not comply with this provision of the Sale Order as to the case pending before the United States District Court for the Northern District of California ("ND Cal Litigation").[8] The Trustee asserts that CF Crespe's failure to comply with this requirement constitutes a breach of contract by CF Crespe ("Breach of Contract Claim"). CF Crespe disputes the Trustee's allegations and asserts that it is not in breach of the Sale Agreement.

Silicon Labs, plaintiff in the ND Cal Litigation, originally raised this issue in July 2016. At that time, Silicon Labs brought a motion to compel DBD to substitute as the real party in interest in the ND Cal Litigation. DBD and CF Crespe opposed the motion.[9] Trustee monitored the litigation but did not take a position.[10] This court granted Silicon Labs' motion but was reversed by the District Court on the basis that Silicon Labs was not a party for whose benefit the Sale Order was entered pursuant to Federal Rule of Civil Procedure ("FRCP")

---

[6] See Notice of Hearing and Notice of Settlement Motion, Dkt. # 227 at 2.
[7] Litigation is defined in Recital G of the Sale Agreement.
[8] *Silicon Laboratories, Inc. v. Cresta*, Case 5:14-cv-03227- PSG (now JCS), United States District Court, Northern District of California.
[9] *See generally*, Silicon Labs' motion to compel compliance (Dkt. # 88), opposition of DBD and CF Crespe (Dkt. # 93), and reply (Dkt. # 103).
[10] *See* the Trustee's Statement (Dkt. # 92); statements of Trustee's counsel, Gregg Kleiner, at the August 19, 2016 hearing on DBD and CF Crespe's motion to modify (Dkt. # 142 at 42).

71.[11] Silicon Labs appealed the District Court Order to the Ninth Circuit. The parties then stipulated to dismissal of the appeal based upon intervening events in the ND Cal Litigation. The current stance of the ND Cal Litigation is that DBD's motion to dismiss was denied, the parties are conducting discovery, and summary judgment motions are scheduled to be heard by Judge Spero in August 2018.

Through the Settlement Agreement, the Trustee, DBD, and CF Crespe seek to amend the Sale Agreement to remove any obligations of DBD or CF Crespe to become a real party in interest in the ND Cal Litigation.

c. Settlement Payment:

In resolution of both these issues, CF Crespe will pay to the Trustee $250,000 in exchange for the releases and amendments to the Sale Agreement set forth in the Settlement Agreement. All sale proceeds will continue to be property of the estate, free and clear of all liens, claims, and interests of DBD.[12] Any funds received as a result of this Settlement Agreement and the related Sale Amendment are available for distribution on administrative, priority, and general unsecured claims – to the extent funds are available.

3. **Analysis**:

Approval of a Compromise of Controversy

FRBP 9019 provides that on motion by the trustee, a court may approve a compromise or settlement following notice and hearing. As recognized by the Ninth Circuit, bankruptcy courts have "great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins. Co.*, 839 F.2d 610, 620 (9th Cir. 1988) (citing *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986)). This discretion is limited by the need to find that the compromise is "fair and equitable." *Id.* In considering whether this standard is met the court must consider:

---

[11] Order Reversing Decision of Bankruptcy Court and Remanding Case (Dkt. # 219). Referred to herein as the "District Court Order."
[12] Sale Agreement ¶ 9, at Dkt. # 34.

> (a)The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Woodson*, 839 F.2d at 620. (quoting *A&C Properties*, 784 F.2d at 1381). These factors are to be "considered as a whole to determine whether the settlement compares favorably with the expected rewards of litigation." *Western Funding Inc. v. Shapiro (In re Western Funding Inc.)*, 550 B.R. 841 (9th Cir. BAP 2016). Each factor does not need to be satisfied provided that the factors as a whole favor approving the settlement. *In re Pac. Gas & Elect. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).

The bankruptcy court is not required to conduct a mini-trial on the merits of the claims to be compromised. *Matter of Walsh Constr., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982). "Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). The role of the court is to "ensure that the trustee has exercised proper business judgment in making the decision to agree to the proposed settlement, and that the settlement 'falls above the lowest possible point in the range of reasonableness.'" *In re Rake*, 363 B.R. 146 (Bankr. D. Idaho 2007) (citations omitted).

The Trustee bears the burden of persuasion that the compromise should be approved. *See Goodwin v. Mickey Thompson Entm't Grp. (In re Mickey Thompson Entm't Grp., Inc.)*, 292 B.R. 415, 420-21 (9th Cir. BAP 2003).

1. *First Three Factors*

Here, analysis of the first three *A & C Properties* factors is interrelated. The factors are: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; and (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it.

### a. *Probability of Success in the Litigation*

This court previously found that DBD and CF Crespe failed to comply with the Sale Order requiring them to become the real party in interest in the ND Cal Litigation.[13] Both this court and the District Court recognized that DBD, through CF Crespe, cherrypicked its compliance with the Sale Agreement and Sale Order, substituting into every litigation identified in the Sale Agreement except the ND Cal Litigation. As the bankruptcy court's order was not stayed pending appeal, DBD and CF Crespe have already substituted into the ND Cal Litigation. While it may still be undone, the Trustee has already received specific performance relief for any breach of the Sale Agreement on this claim. Hence there is a high probability of success on the Trustee's claim of breach, and having already ruled on the issue presented, this court does not find the litigation to be particularly complex.

At the same time, there is no evidence that the Trustee's success will entitle the estate to damages. The Trustee recognized as much during the prior proceedings before this court in August 2016, where counsel went so far as to request that the estate be excused from further hearings on the issue of whether DBD had violated the Sale Agreement, viewing it as a dispute solely between Silicon Labs and DBD.

And again, the disputed breach of contract claim was cured in October 2016 when DBD and CF Crespe substituted into the ND Cal Litigation pursuant to this court's unstayed order. DBD and CF Crespe continue to seek withdrawal from the ND Cal Litigation. But, thus far, no liability has been incurred against the estate as a result of the alleged breach and the Trustee has not incurred any administrative costs defending the ND Cal Litigation.

Rather than defending the estate's current position, the Settlement Agreement seeks to ensure that Silicon Labs' $2.1 million unsecured claim is an obligation of the estate—not DBD or CF Crespe. The Trustee's acceptance of this revision is based upon her projections (discussed below) that without the additional cash proceeds provided in the Settlement

---

[13] Amended Order Granting Motion to Compel, Dkt. # 127. As the District Court reversed this order on other grounds, the District Court assumed without deciding that DBD violated the Sale Order. *See* District Court Order, Dkt. # 219 at 9.

6

Agreement, the unsecured, non-priority claimants are "out of the money" and unlikely to receive any distribution from the estate. In sum, bringing cash into the estate has a greater impact on a potential distribution to most holders of unsecured claims than reducing the amount of unsecured claims.[14] Of course, the notable exception to this is Silicon Labs.

### b. Difficulties in Collection

There is no indication that should the Trustee be awarded damages she would encounter difficulties in collection.

### c. *Complexity of the litigation and the expense, inconvenience, and delay necessarily attending it*

Based on the settlement parameters, this factor is evaluated in two contexts. First, the complexity, expense, and inconvenience associated with the ND Cal Litigation. Second, the complexity, expense, and inconvenience associated with the remainder of Debtor's litigation acquired by DBD and CF Crespe.

#### i. <u>ND Cal Litigation</u>

If DBD or CF Crespe loses the ND Cal Litigation, and remains a real party in interest, it will be responsible for the claims established by Silicon Labs, thereby, eliminating Debtor's liability. If, counter to past results, DBD or CF Crespe prevails on the counterclaims it may obtain and recover a judgment against Silicon Labs. Then, after repayment of DBD's litigation advances, CF Crespe would distribute a portion of the remaining cash proceeds to the estate. Silicon Labs asserts that prior to Debtor's bankruptcy filing, it obtained rulings that Debtor's products infringed Silicon Labs' patents as a matter of law.[15] Neither the

---

[14] In its Opposition, Silicon Labs asserts that if successful in the ND Cal Litigation it is entitled to attorneys' fees and costs and prejudgment interest in excess of $ 1 million. Objection to Motion, Dkt. # 234 at 27. Silicon Labs further asserts that it is entitled to treble damages of $6.6 million for willful infringement of its patents by Debtor. If Silicon Labs were to obtain such an award, it would be subordinated pursuant to 11 U.S.C. § 726(a)(4) which provides for payment of an allowed claim for exemplary damages after all priority unsecured, non-priority unsecured, and late-filed unsecured claims are paid in full. It is exceedingly unlikely that all such claims will be paid in full by this estate.

[15] See Objection to Motion (Dkt. # 234 at 27).

Trustee, DBD nor CF Crespe argue that DBD or CF Crespe is likely to prevail on the counterclaims or derive additional proceeds for the estate based on the ND Cal Litigation.

        ii.   Remainder of Litigation

The majority of the litigation matters acquired through the sale involved Debtor as plaintiff. At the time of the sale, the parties were focused principally on pending actions before the Patent Trial and Appeal Board ("PTAB") because Debtor's patents needed to be upheld by the PTAB in order for Debtor to succeed on its patent infringement and related claims against other defendants. This litigation was extraordinarily expensive for Debtor. At the sale hearing, Trustee's counsel noted that according to Debtor's tax returns it spent over $8 million in attorney's fees in 2014.[16] Further, as of the petition date, Debtor owed the Irell & Manella law firm $502,779.33, which DBD agreed to fund and guarantee payment to in order to proceed with the PTAB litigation.[17] Schedules filed in this case show that in addition to amounts owed to Irell, Debtor owed $913,450 in attorney's fees to a myriad of law firms. Thus, when the parties agreed on the terms of sale, the additional cash proceeds were subject to incurrence and payment of substantial attorneys' fees—and the extended time associated with expensive litigation.

Now, the Trustee has agreed to allow DBD and CF Crespe to "buy out" the additional cash proceeds for $250,000 or less.[18] The only reason provided is that CF Crespe asserts it has expended in excess of $750,000 and has yet to collect any money on account of the acquired intellectual property.

Context is everything. The expenditures by CF Crespe are substantial but not indicative of what the parties projected expenses to be at the time of sale. Further, this court is only familiar with the ND Cal Litigation—which was never expected to generate significant proceeds. Notably, no information is presented on the outcome, if any, of the three matters before the PTAB, or their attendant litigation. The omission of any information on the

---

[16] Transcript of proceedings of May 12, 2016, Dkt. # 134 at 23, lines 7 -11.
[17] Trustee's reply in support of Sale Motion, Dkt. # 60 at 3, lines 6-13.
[18] The Settlement Agreement does not allocate the settlement proceeds.

litigation anticipated to produce additional proceeds is troublesome. However, it must also be considered in the context of the Trustee's statutory duties. Among other things, the Trustee is required to "collect and reduce to money the property of the estate" and "close such estate as expeditiously as is compatible with the best interests of parties in interest." *See* 11 U.S.C. § 704(a). Further, the Trustee's compensation is calculated based upon moneys disbursed by the Trustee to parties in interest, *see* 11 U.S.C. § 326(a); thereby incentivizing the Trustee to maximize distributions to creditors. No argument was made that the Trustee compromised her statutory obligations.

Taking into consideration all of these issues, this factor weighs in favor of the compromise.

### d. *Paramount Interest of Creditors*

The fourth factor considers "the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *In re A & C Properties*, 784 F.2d at 1381. This interest reflects the desire of creditors to obtain the "maximum possible recovery but also their competing desire that recovery occur in the least amount of time." *In re Marples*, 266 B.R. 202, 207 (Bankr. D. Idaho 2001). Further, while a creditor's objection to a compromise must be provided due deference, the objection is not controlling and must be weighed alongside other factors. *See In re A & C Properties*, 784 F.2d at 1382.

The Trustee asserts that the compromise is in the best interest of creditors because it will allow for a prompt closing of the estate and distribution to unsecured, non-priority creditors. As presented in the Reply, as of February 8, 2018, the Trustee held on behalf of the estate $76,497.05.[19] She anticipates that chapter 7 administrative and priority claims will total $76,500.[20] If approved, the estate will receive $250,000 upon receipt of a final, non-appealable order. Thereby, allowing the Trustee to complete administration of the estate and provide a pro rata distribution to unsecured, non-priority creditors. These claimants are

---

[19] This information is accepted solely as an indication from the estate representative of the current financial status of the Chapter 7 case.

[20] The Bankruptcy Code requires administrative and priority unsecured claims to be paid in full prior to any distribution on unsecured, non-priority claims. 11 U.S.C. § 726.

9

anticipated to recover 7% of their allowed claim amount, provided that, additional administrative claims do not reduce the available funds.

Silicon Labs strenuously objects to the motion and is the holder of the largest unsecured, non-priority claim filed in the case. Its claim comprises approximately 60% of the allowed unsecured, non-priority claims against the estate. It is also plaintiff in the ND Cal Litigation; so its interests are not clearly aligned with the remaining unsecured creditors. That said, the Trustee's motion omits the potential risk to all creditors associated with the Settlement Agreement: if the estate incurs significant administrative claims they may eclipse the funds received. Based on prior bankruptcy court litigation involving the ND Cal Litigation, approval of the Settlement Agreement is likely to be followed by an appeal, thereby incurring an administrative claim for attorneys' fees to defend the Settlement Agreement. The parties to it appreciate this likelihood as paragraph 13 of the Settlement Agreement provides for DBD and CF Crespe to reimburse the Trustee and the estate for 50% of the fees and costs incurred, up to $25,000, related to an appeal or similar action.

Both Silicon Labs and DBD assert that they have incurred extraordinarily high litigation costs, at least in comparison to the potential assets in this case. Thus far, the Trustee dodged incurring litigation expenses by monitoring proceedings and choosing not to enforce the breach of contract due to its limited impact on the estate. If the Settlement Agreement is approved, the Trustee becomes a necessary party to any appeal that follows.[21] The only monetary amount tied to potential appeal costs is $50,000, the maximum amount at which DBD and CF Crespe commit to reimbursing the Trustee's litigation costs. Usually, this would be a reasonable amount of fees and costs to project for defending approval of a compromise of controversy. These, however, may not be usual times. The bottom line is that if additional administrative claims are less than $275,000, then the Settlement Agreement provides an advantage to unsecured, non-priority creditors.

---

[21] To be clear, a Trustee should not avoid proper administration of an estate because of the possibility of an appeal. But where, as here, the Trustee chooses to charge into the fray, she is expected to incorporate the cost of the fight into her analysis of the merits of the deal.

Upon consideration of the *A & C Properties* factors, this court finds that while the Settlement Agreement includes several weak areas—resulting in a wobbly three-legged stool—it is fair and equitable and does not fall below the range of a reasonable settlement. In essence, the stool still stands. Therefore, it is approved.

4. <u>Authority to Review Issues Presented</u>

Silicon Labs asserts that this court lacks jurisdiction or authority to review the issues presented by the Trustee. These arguments are not persuasive for the reasons discussed below:

    a. *Finality of Sale*:

Silicon Labs contends that courts may amend and vacate sale orders only in limited circumstances. Its position is premised on the general principle that finality is necessary to bankruptcy sales in order to encourage buyers of assets of a bankruptcy estate. *See Gekas v. Pipin (Matter of Met-L-Wood Corp.)*, 861 F.2d 1012, 1019 (7th Cir. 1988). Indeed, this is a key principle but it is not relevant because the parties do not seek to amend or vacate the Sale Order. The fundamental elements of the Sale Agreement remain the same: Debtor's intellectual property assets and most of its litigation is sold to DBD and CF Crespe (only the ND Cal Litigation is omitted); DBD waives any claim to the sale proceeds so they are available to unsecured creditors; and the total amount to be received by the estate is quantified. When this is contrasted with cases where a debtor seeks to unwind a foreclosure sale or a bankruptcy trustee's sale in order to regain the underlying property, *see In re Onouli-Kona Land Co.*, 846 F.2d 1170 (9th Cir. 1988), it is clear that principles of mootness are not applicable to the Settlement Agreement.

    b. *ND Cal Litigation not Property of Estate*:

Silicon Labs correctly asserts that following closing of the sale, the estate no longer has an interest in the ND Cal Litigation. It is undisputed that a sale pursuant to 11 U.S.C. § 363 divests the bankruptcy estate of an interest in property. However, the Trustee is not asserting a present interest in the ND Cal Litigation but rather a claim based upon the promises made in the Sale Agreement. Without a doubt this court retains jurisdiction over

issues relating to the proceeds due to the estate from a Sale Agreement entered into during the bankruptcy and the Trustee maintains the authority to seek to enforce that same Sale Agreement. 11 U.S.C. §§ 541(6), 542, and 704. As such, this court has jurisdiction over the applicable issues and assets.

    c. *Motion Runs Afoul of FRCP 60*:

Silicon Labs argues that the requirements of FRCP 60, made applicable by FRBP 9024, are not satisfied. In essence, it argues that relief is requested too late and that grounds for relief have not been established. But the Trustee is not seeking to modify, alter, or amend the Sale Order. Instead, she seeks authorization to amend the Sale Agreement that the Sale Order approves pursuant to FRBP 9019, addressing compromise and arbitration.

Rule 9019 is specific to bankruptcy, and incorporates a concept not required in traditional litigation in which each party acts on its own behalf. As originally provided in Section 26 of the Bankruptcy Act, the trustee or representative of the estate "may compromise any controversy arising in the administration of the estate" on terms the trustee determines to be in the "best interest of the estate."[22] This authorization was and is subject to approval by the bankruptcy court. Requiring court approval harmonizes a trustee's ability to resolve and liquidates claims with a trustee's obligations on behalf an estate rather than an individual interest.

Again, the Sale Order will remain unchanged, the Sale Agreement will be modified as approved, and the underlying transaction will remain largely unchanged. As such, this motion is properly reviewed pursuant to FRBP 9019, instead of FRCP 60.

    d. *Relief Requested Provides a Third-Party Discharge Prohibited by § 524(e)*:

Here, Silicon Labs asserts that the amendment constitutes an improper third-party discharge of DBD's obligations. This argument misses the mark as no party will receive a discharge in this case. Pursuant to 11 U.S.C. § 727, only an individual is entitled to obtain a discharge in a Chapter 7 case. No discharge order may be entered in this bankruptcy, and so

---

[22] *See* Bankruptcy Act of 1898, 30 Stat. 544, Sec. 26, superseded by Bankruptcy Reform Act of 1978, 92 Stat. 2657, and former Bankruptcy Rule 919, superseded by FRBP 9019.

12

there is no risk of a third-party obtaining an impermissible discharge.  DBD certainly seeks to obtain an advantage through the Settlement Agreement but that is not prohibited by § 524(e).

    e.  *Sale Order Fails to Reserve Jurisdiction:*

Silicon Labs next argues that the compromise may not be considered because the Sale Order does not include a provision reserving jurisdiction to approve amendments or authorize the parties to amend the agreement without further court order.  Instead, paragraph 16 of the Sale Agreement retains jurisdiction for the bankruptcy court "to resolve all disputes concerning the interpretation and enforcement" of the Sale Agreement.[23]  This provision, coupled with the Sale Order's approval of all terms and conditions of the Sale Agreement, is more than sufficient to reserve jurisdiction for this court to consider the relief requested.[24] And as the Trustee notes, the bankruptcy court is the only court in which a motion to approve a compromise of controversy and amend the Sale Agreement could be brought.   In addition, as the breach of contract claim is premised on interpretation and enforcement of the Settlement Agreement, review of a compromise resolving this dispute falls within the express terms of the Sale Agreement.

    f.  *No Actual Controversy Exists:*

Rule 9019 provides for approval of a compromise or settlement after notice of hearing. A compromise is defined as "an agreement for the settlement of a real or supposed claim in which each party surrenders something in concession to the other."[25]  Here, the Trustee and DBD and CF Crespe have entered into a classic compromise.  Each party gave up something of relatively little value to them as a concession to the other and in order to obtain something of greater value.  As such, this matter is properly before the court pursuant to Rule 9019.

Silicon Labs' broader point however is that neither of the issues being compromised are new and that the motion is a tool for relief.  These are valid points that were addressed above within the *A & C Properties* analysis.

---

[23] Sale Agreement, Dkt. # 34, Exh. B, p. 14.
[24] Sale Order, Dkt. # 66, p. 2, line 5.
[25] Black's Law Dictionary, 9th Ed., p. 326.

g. *Judicial Estoppel Bars Relief:*

Finally, Silicon Labs asserts that because the parties previously sought approval of the Sale Order they must be judicially estopped from seeking contrary relief. This overstates the relief requested. The parties do not seek to revoke the Sale Order or the Sale Agreement. Rather, as noted initially, they seek to alter some of its terms.

In order for judicial estoppel to apply: (1) "a party's later position must be 'clearly inconsistent' with its earlier position," (2) the party must have previously succeeded on a position in a prior proceeding, so that judicial acceptance of the inconsistent position "would create 'the perception that either the first or the second court was misled,'" and (3) the party seeking an inconsistent position would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001) (internal citations omitted). Here, judicial estoppel is not established as the Trustee's positions in seeking "approval for" and "amendment to" the Sale Agreement are not clearly inconsistent. Nor does amendment to an agreement create the impression that the court was initially misled about it. Finally, while Silicon Labs will be affected by the Sale Amendment it was neither a party to it nor a party for whose interest it was made.

5. **Conclusion**

Approval of the Settlement Agreement is supported by application of the *A & C Properties* factors. There is no impediment to this court's review of the Motion. Accordingly, the Motion is granted. The Trustee is directed to upload an order consistent with this decision.

**\*\*END OF MEMORANDUM DECISION\*\***

# COURT SERVICE LIST

**Via ECF:**

All ECF Recipients